UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,              :
     Plaintiff,                              :
                                             :
v.                                   :      CIVIL ACTION NO.
                                             :      3:07-cv-00303 (VLB)
PATRICK GIL, as Administrator of the :
Estate of Andrew M. Kissel, and      :
HAYLEY W. KISSEL, a/k/a HAYLEY       :
B. WOLFF,                            :
     Defendants.                         :      February 5, 2009


<u>MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [Doc. #56]</u>

     This is an action for equitable relief.  Northwestern Mutual Life Insurance

Company ("Northwestern Mutual") issued a $15 million life insurance policy to

Andrew Kissel.  After his death, Northwestern Mutual gave notice to Patrick Gil,

the administrator of Kissel's estate, and his widow Hayley Kissel, now Hayley

Wolff, the policy's beneficiary, that it sought rescission of the life insurance

policy.  It then brought suit in this Court to enforce the equitable remedy of

rescission.  Wolff counterclaimed for breach of contract, violations of the

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a,

the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-

816(6), bad faith, negligence, and breach of fiduciary duty.

     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as

Northwestern Mutual is a Wisconsin corporation with a Wisconsin principal place

1

of business, and Gil and Wolff are citizens of Connecticut.  On February 4, 2008, the Court dismissed Wolff's CUTPA and CUIPA claims. On March 31, 2008, Northwestern Mutual filed the within motion for summary judgment [Doc. #56] arguing that there are no disputed issues of material fact and it is entitled to summary judgment as a matter of law on its one count claim for rescission and Wolff's remaining counterclaims. For the reasons hereinafter set forth, Northwestern Mutual's motion is GRANTED in its entirety.

<u>Facts</u>

Examination of the plaintiff's Local Rule 56(a)(1) statement, the response, and the exhibits attached thereto yields the following undisputed material facts. Kissel was a resident of New York and then Connecticut with a history of mental illness.  Dr. Alan Wachtel treated Kissel through the 1980s, and saw him on one occasion in 1999.  At that session, Kissel admitted using cocaine heavily throughout the previous decade but stated that he had quit the month before. From 1999 through June 2004, Kissel saw a number of different doctors. His records at CVS Pharmacy show that in the time period from December 2002 through December 2003, Kissel was prescribed Lexapro, Ambien, Hydrocodone, Percocet, and Levaquin by four different doctors. [Doc. #57 Ex. O] His records at Grannick's Pharmacy show that from October 2003 to June 2004, Kissel was prescribed Zithromax, Hydrocodone, Avelox, Gani-Tuss, Vicoprofen, and Lexapro by four other doctors. [Doc. #57 Ex. Q] In December 2003, Kissel began seeing Dr. Linus Abrams, another psychiatrist, who prescribed Lexapro for Kissel until his

death. In January 2004, Abrams diagnosed Kissel with post-traumatic stress disorder.

Kissel first met Lee Weinstein in September 2003. Weinstein was an insurance agent who primarily worked for Northwestern Mutual. His contract with Northwestern Mutual was titled, "Full Time Special or Soliciting Agent's Contract." In that contract, his duties were defined as soliciting and procuring life insurance contracts for Northwestern Mutual.  The contract included a clause stating, "[the agent] shall not engage in any business other than that covered by this agreement except with the consent of [Northwestern Mutual]." [Doc. #57, Ex. A]

Kissel and Weinstein had a social relationship through their daughters' school and Weinstein frequently visited Kissel's house to socialize. In December 2003, Weinstein and Kissel smoked marijuana together at a Grateful Dead concert. In some time after the summer of 2004, Wolff told Weinstein that Kissel was receiving marital counseling because he had been unfaithful to her. In the winter of 2003 through the spring of 2004, Weinstein and the Kissels began to have conversations about Kissel's life insurance coverage. In April 2004, Kissel began the process of applying for life insurance policy from Northwestern Mutual.

Kissel was required to supply three forms to Northwestern Mutual: an application, a medical questionnaire, and a non-medical questionnaire. The medical questionnaire is identical to the non-medical questionnaire, except that the medical questionnaire is filled out by a doctor and then signed by the

3

insurance applicant.  The medical questionnaire was administered by Dr.
Vipulkumar Bhalodiya on June 9, 2004. To the question, "Are you taking
medication or drugs (legal or illegal, prescription or non-prescription) for any
reason? If yes, please list and explain" Kissel answered, "yes- multiple vitamins."
To the question, "In the last 10 years, have you had, been told you had, or been
treated for: anxiety, depression, stress, or any psychological or emotional
condition or disorder?" Kissel checked "no."  To the question, "Have you sought
or received counseling or treatment for the use of alcohol or drugs or had any
symptoms of alcohol abuse or drug addiction?" Kissel checked "no."  To the
question, "In the last 10 years, have you used marijuana, cocaine, heroin,
amphetamines, or hallucinogens?" Kissel checked "no."  For "yes" answers, the
questionnaire required the applicant to list details and healthcare providers. On a
question regarding family history, Kissel listed his brother as "healthy," though
he had been murdered in November 2003. Kissel listed only one doctor, Dr.
Charles Steinberg, as a treating physician. At the bottom of the form was printed
the statement, "I declare that my answers are correctly recorded, complete and
true to the best of my knowledge and belief.  Statements in this application are
representations and not warranties." At the bottom of the form, both Bhalodiya
and Kissel signed. [Doc. #57, Ex. G] On June 26, 2004, the  $15 million
Northwestern Mutual life insurance policy was issued with a contestable period
of 2 years.

   Kissel had two previous life insurance policies in the amount of $4 million

through New York Life.  In February 2004, Kissel paid an annualized premium for those policies. In February 2005, Kissel did not pay the premiums for the New York Life policies and they expired.  On April 3, 2006, Kissel died by homicide. Thereafter, Northwestern Mutual brought suit for rescission of the policy.

## Discussion

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor."  Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).  "The moving party bears the burden of showing that he or she is entitled to summary judgment."  Huminski, 396 F.3d at 69.  "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury

5

verdict in its favor." <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 91 (2d Cir. 2002).

<u>Rescission</u>

Northwestern Mutual argues that it is entitled to rescind Kissel's life insurance policy because Kissel made several material misrepresentations in his medical questionnaire.  "[A]n insurance policy may be voided by the insurer if the applicant made material misrepresentations relied on by the company." <u>Pinette v. Assurance Co. Of America</u>, 52 F.3d 407 (2d Cir. 1995) (reviewing Connecticut law). In its motion, Northwestern Mutual relies on the answers to the medical questionnaire.  Under Connecticut law, a "misrepresentation" is one "known by the insured to be false when made" though not necessarily with conscious intent to defraud. <u>Middlesex Mutual Ins. Co. v. Walsh</u>, 218 Conn. 681, 692 (Conn. 1991). However, an insured has an affirmative duty to "inform himself of the content of the application signed by him, under penalty of being bound by the representations recorded therein" if an agent fills out the application. <u>Pinette</u>, 52 F.3d at 409. A "material fact" is one that would "influence the parties in making the contract . . . matters made the subject of special inquiry are deemed conclusively material."  <u>State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co.</u>, 109 Conn. 67, 70-71 (Conn. 1929).

Wolff makes three arguments against rescission.  She argues 1) that the misrepresentations are not attributable to Kissel, 2) that Connecticut law on the materiality of misrepresentations is stale and should be changed, and 3) that

6

Northwestern Mutual had notice through its agent, Weinstein, of the falsity of Kissel's statements in the three applications and therefore did not rely upon them.  The Court will address each argument in turn.

<u>Attribution</u>

It is not disputed that many of the answers in the application for life insurance, non-medical questionnaire, and medical questionnaire were false. Wolff argues that there is a contested issue of material fact as to whether the answers are attributable to Kissel, or were filled in by Weinstein or Bhalodiya without Kissel's knowledge. Under Connecticut law, an insured has a duty to inspect a form filled out by an agent, and is deemed to have adopted any misstatements within if he signs it.  <u>Pinette</u>, 52 F.3d at 407.  However,

> If through the conduct of [the insurer's] agent, [the insured] failed to read over the questions and answers in the applications, he would in effect have made no misrepresentations at all; on the other hand, if he became aware of the false answers by any means before or after signing the applications, he must be considered to have adopted the insurance agent's answers as his own and, therefore, he would be responsible for the untrue representations.

<u>Lewis v. John Hancock Mut. Life Ins. Co.</u>, 443 F.Supp. 217, 219 (D.Conn. 1977) The facts in that case are distinguishable from the present case. In <u>Lewis</u>, the beneficiary's decedent cited the deposition testimony of the insurance agent admitting that he completed the insurance questionnaire without the participation or assistance of the insured and that he failed to caution the insured to read the representations before signing the questionnaire, affirming to the truth of the statements. There is no such testimony or affirmative claim in this case as to

7

Bhalodiya.

"The general rule is that when a person of mature years who can read and write signs or accepts a formal written contract ... it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so." (Internal quotation marks omitted.) LLP Mortgage v. Gurski, No. CV 02 0087002, 2003 WL 231679 (Conn. Super. Jan. 10, 2003) (Pickard, J.); see also Kelly v. John Hancock Mutual Life Ins. Co., 131 Conn. 106, 110, 38 A.2d 176 (Conn. 1944) (insured was under duty to know contents of insurance application signed by her, and failure to do so was inexcusable negligence).

If, after some other person filled out forms, Kissel discovered that the forms contained answers which Kissel knew to be false, Kissel could not accept the fruits of the fraud on Northwestern Mutual. See Davis-Scofield v. Agricultural Ins. Co., 145 A. 38 (Conn. 1929); Mutual Life Ins. Co. of New York v. Hilton-Greene, 241 U.S. 613, 623 (1916).  It is undisputed that Kissel received the completed and executed policies with both the medical and non-medical questionnaires in June 2004, and accepted them.  They were found in his effects after his death. [Doc. #57, Ex. G] It is undisputed that Kissel was aware of his own drug use, medical history, and psychiatric treatment, none of which were disclosed in the application. Therefore, even assuming arguendo that Kissel had no knowledge of any misstatements at the time he signed the applications, Northwestern Mutual would still be entitled to rescind the policy because of Kissel's ratification of the false statements.

8

**Materiality**

Wolff argues that the Court should not grant rescission because Kissel's eventual cause of death, homicide, bears no relation to the undisclosed drug use, medical treatment, or psychiatric history.  Wolff acknowledges that this is not the established rule on materiality in Connecticut, but argues that the Court should instead adopt a different standard employed by Kansas, Missouri, and Nebraska. However, Wolff does not cite any authority for a district court of the United States to decide contrary to the common law of the state whose law it is interpreting. The courts of the United States are bound to follow the laws of the several states as expressed by the highest courts of those states when hearing common law claims. Erie Railroad. Co. v. Tompkins, 304 U.S. 64 (1938).  Therefore, the Court must apply the Connecticut standard of materiality which is laid down in State Bank & Trust Co., 109 Conn. at 70-71, and acknowledged by both parties to be the governing precedent.  Under that precedent, there is no dispute that matters of special inquiry, such as questions requiring a "yes" or "no" answer, are conclusively deemed material.  Therefore, Kissel's misstatements are material, and grounds for rescission.

**Agency**

Wolff finally argues that Northwestern Mutual is charged with knowledge of the falsity of Kissel's statements through Weinstein, or was at least on notice of a duty to inquire further into Kissel's drug use, medical history, and psychiatric treatment. Northwestern Mutual responds that Weinstein did not have knowledge

of the facts upon which it bases its motion for summary judgment. The rule in Connecticut is that principals are deemed to receive and have the benefit of their agent's knowledge contemporaneously with the agent's actions, except when 1) it is not the duty of the agent to disclose, 2) the agent is acting adversely to the principal, or 3) the agent is acting in fraud of the principal.  Reider v. Arthur Andersen, LLP, 784 A.2d 464, 470 (Conn.Super. 2001); See also Scofield, supra.. Here, even assuming that Weinstein was acting within the scope of his agency at the times that he gained knowledge of Kissel's marijuana use and marital counseling, there is no assertion that Weinstein knew that Kissel had used cocaine, that he was receiving psychiatric treatment, as opposed to marital counseling, or that he was seeing other doctors beyond those described in the medical questionnaire.  While in some instances an insurer has a duty to inquire to gain a fuller picture of the facts than those known to the insured, here, there was nobody to inquire of.  Weinstein did not know, Bhalodiya did not know, and the single treating physician identified by Kissel did not prescribe any anti-depressants or know of Kissel's history of drug use.  Cf. Brayer v. John Hancock Mut. Life Inc. Co., 170 F.2d 925 (2d Cir. 1950) (insurer had duty to inquire of disclosed treating physician who had diagnosed pancreatic cancer but informed insured that he had gastroenteritis).  Northwestern Mutual had no way of learning of the falsity of Kissel's statements because Kissel concealed his medical and psychiatric history from every person with a duty to report to Northwestern Mutual. Therefore, Northwestern Mutual is not charged with knowledge of the

**10**

falsity of Kissel's answers and rescission must therefore be granted.

## Wolff's Counterclaims

Northwestern Mutual argues that it is entitled to judgment as a matter of law on each of Wolff's counterclaims.  Wolff responds that there are disputed issues of material fact as to each counterclaim.  The Court shall examine each in turn.

## First and Fourth Counterclaims: Breach of Contract

Wolff claims that Northwestern Mutual breached its life insurance contract with Kissel by refusing to pay her, the beneficiary, upon proper notice of death and presentment of the policy. Northwestern Mutual argues that the rescission of a contract bars an action for breach of that contract.

> [T]he effect of a rescission is to extinguish the contract and to annihilate it so effectively that in contemplation of law it has never had any existence, even for the purpose of being broken. Accordingly, it has been said that a lawful rescission of an agreement puts an end to it for all purposes, not only to preclude the recovery of the contract price, but also to prevent the recovery of damages for breach of the contract.

Metcalfe v. Talarski, 213 Conn. 145, 159 (Conn. 1989).  As the effect of rescission is to legally erase the existence of a contract ab initio, Wolff's breach of contract claims are therefore dismissed.

## Second and Seventh Counterclaim: Bad Faith

Wolff premises her Second and Seventh Counterclaims for bad faith solely on Northwestern Mutual's alleged duty to investigate for possible fraud. [Doc. # 70, p. 35] As the Court above found that Northwestern Mutual had no duty to

inquire as to the facts upon which it sought rescission, because it had no notice of them, Kissel's claims for bad faith must be dismissed.

<u>Fifth Counterclaim: Negligence</u>

Wolff claims that Weinstein negligently advised Kissel to let his prior New York Life policies lapse, though Weinstein knew that the New York Life policies were incontestable and the Northwestern Mutual policies were not.  Wolff argues that because Weinstein knew that Kissel had used marijuana and had undergone martial counseling, and had therefore submitted false applications putting him at risk of rescission, Weinstein should have advised Kissel to maintain his old insurance.  However, Wolff's own expert, on whose testimony she relies to establish a standard of care, admitted that he had no criticism of Weinstein's advice as regarded replacement insurance, but only of Weinstein's failure to report Kissel's marijuana use and depressed state to Northwestern Mutual. [Doc. #77, Ex. 6] The expert's testimony was that Weinstein owed Northwestern Mutual a duty to report Kissel's marijuana use and depressed state.  Northwestern Mutual argues that Weinstein was acting outside the scope of his agency when he advised Kissel to let his prior policies lapse despite knowing of Kissel's marijuana use and depressed state.

As stated above, "agency really ceases" when agents act adversely to the interests of their principal or in fraud of their principal. <u>Reider</u>, 784 A.2d at 470. For Weinstein to submit a report that he knew to be false was adverse to the

**12**

interests of his principal.  Weinstein knew that because of his drug use and personal problems, Kissel was a higher insurance risk than his application to Northwestern Mutual would suggest.  The only conclusion that can be reasonably be drawn is that Weinstein had either abandoned his principal's interests due to his personal relationship with Kissel, or was acting in fraud of Northwestern Mutual because he wanted a commission on the sale of life insurance despite knowing that Northwestern Mutual might consider Kissel a bad risk if his behavior were disclosed.  Therefore, Northwestern Mutual is not charged with its agent's negligent advice to let Kissel's incontestable policies expire, and summary judgment must be granted on Wolff's count of negligence.

### Sixth Counterclaim: Breach of Fiduciary Duty

Wolff argues that a fiduciary duty existed between Kissel and Weinstein, that Weinstein breached that duty, that Wolff was thereby injured, and that Northwestern Mutual is liable for its agent's actions.  Northwestern Mutual argues that it did not have a fiduciary relationship with Kissel.  "It is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." Sherwood v. Danbury Hosp., 896 A.2d 777, 796 (Conn. 2006).

Wolff argues that the existence of a fiduciary relationship is a question of fact for the jury.  However, "[a]lthough agency [as a fiduciary relationship] is normally a question of fact, its existence or nonexistence may be determined as a

matter of law." <u>Macomber v. Travelers Prop. and Cas. Corp.</u>, 804 A.2d 180, 194 n.12 (Conn. 2002).  The Supreme Court of Connecticut has made a "single pronouncement . . . where [it] characterized the relationship between insurer and insured as 'commercial.'" <u>Id.</u> at 641.  In deciding other claims for breach of fiduciary duty between an insurer and insured, Connecticut courts have consistently held that no fiduciary duty arises when an insurer sells a policy to an insured.  <u>See Sheltry v. Unum Life Ins. Co. of America</u>, 247 F.Supp.2d 169,178 (D.Conn. 2003) (citing Connecticut state cases finding no fiduciary relationship between insurer and insured).  There are no facts in this case which would suggest that Northwestern Mutual had any more significant relationship with Kissel than that of a typical insurer/insured relationship, and the Court thus concludes that no fiduciary relationship existed between them.

Wolff argues that Northwestern Mutual, through Weinstein, had not only an insurance sales relationship, but an insurance advising relationship.  However, even if Weinstein offered insurance advice to Kissel, there is no evidence that Northwestern Mutual took any act to present Weinstein as an agent for offering insurance advice.  "Apparent authority is derived not from the acts of the agent but from the deliberate or inadvertent acts of the principal." <u>111 Whitney Avenue, Inc. v. Commisssioner of Mental Retardation</u>, 802 A.2d 117, 124 (Conn. App. Ct. 2002) Northwestern Mutual's contract with Weinstein does not encompass the provision of insurance advice, only insurance sales. Weinstein testified that he had no other contract with Northwestern Mutual. Weinstein's business card

clearly stated that he was a member of Northwestern Mutual's "sales and distribution" force. [Doc. #57, Ex. A] Moreover, he sold the products of several other life insurance companies.  Therefore, there is no evidence that Weinstein had actual or apparent authority to offer insurance advice to Kissel on Northwestern Mutual's behalf, and summary judgement must be granted on Wolff's breach of fiduciary duty counterclaim, as there is no evidence of a fiduciary relationship between Northwestern Mutual and Kissel.

Northwestern Mutual's motion for summary judgment [Doc. #56] is GRANTED. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 5, 2009.